And we'll take up Rodriguez Diaz v. Garland. And I guess we'll start with Ms. Wilson. Good afternoon, Your Honors. May I please the Court? Sarah Wilson on behalf of the Federal Respondents. I would like to reserve three minutes for rebuttal and I will pay attention to my time. Thank you, Counsel. Nice to see you again, Ms. Wilson. Nice to see you as well. The District Court here erred in declaring that the long-standing procedures that are governing immigration bond hearings are unconstitutional and instead ordering the government to afford the petitioner a new bond hearing at which the government, DHS, was required to bear the burden of proof, bear the burden of justifying continued detention by clear and convincing evidence. The District Court's analysis was the legal issue is in conflict with decades of Supreme Court precedent that has consistently recognized that the political branches have considerable deference in determining bond eligibility for individuals who are currently contesting their removability. The Supreme Court has consistently affirmed the constitutionality of detention pending those removal proceedings despite never requiring the government to bear the burden of proof in any of those proceedings and certainly has never required the government to bear that burden by clear and convincing evidence. Although these cases certainly don't involve modern-day Section 1226A or those procedures, we don't think that that undermines the force of their importance here. In each of those cases, the individuals were subject to detention schemes that afforded considerably less process than is available under Section 1226C. But nonetheless, the Supreme Court authorized detention under those schemes without ever suggesting that the government needs to bear the same, it needs to satisfy the same standard that it applies in the civil contention, civil commitment context or under the Bail Reform Act. We think that that's significant here and that we, that the detention scheme continues to be upheld despite not having those features under this provision. I'm going to ask counsel, the Supreme Court granted cert in a decision of our courts, Alamond-Gonzalez. It involves a different provision. It's more focused on the statutory issue, but does the government think there's any reason that that case may end up impacting this one? I certainly could, Your Honor, especially if the way that this court frames the question is similar to the way that the district court approached it. There, the district court really was starting from, you know, the background law of the circuit and trying to extrapolate where it should go based on what the court had said in Singh, what it had done in Doof, and what it had done in those prior cases that were about statutory interpretation. So I think having some clarification of what is the, what of the existing background law of the circuit survives Jennings could be helpful to the court in deciding where it should go from there. It certainly is helpful with respect to a number of the places Amiki and the respondents here have made arguments about how it makes little sense to apply a different standard in one context versus the other. So in the event that the court ends up clarifying what standard applies to bond hearings, should they be available under 1231 or 1226E in another case, that certainly would clarify whether, you know, whether that argument is even applicable here or even a relevant consideration for the court to be considering here in setting the bond standard for 1226A. But we do think that the Supreme Court statute. In your briefing, you said that the wrong background law is Matthews versus Eldridge. Is that, did I read that correctly? That's right. I think we've made kind of two points. First, we said that if you look at the way that the Supreme Court has approached these detention questions, they haven't been truly applying a Matthews versus Eldridge test in the way that you traditionally think of that. Instead, they're really starting from the standpoint that immigration detention is a lawful aspect of the removal process and that the government, accepting the point that the government has the ability to detain, and then from there works and looks at whether or not the judgments that have been made with respect to that detention are reasonable. So it ends up looking a lot less like the traditional Matthews versus Eldridge and more like what the court did with that same, a similar version of that test in Landon versus Placentia. Two follow-up questions. One, I think there are nine circuit cases that do apply Matthews versus Eldridge to the immigration context. So does that bind us? And then two, what is the government's view of where we start then? Is it the Demore case? Yeah, so I'll take the second question first. I think that the Demore provides a useful framework. We will remind the court that that's, of course, a different detention statute, so it's not that you can necessarily borrow the whole of that analysis. But I think that as that is a statute that provides less process that is available to those individuals, it certainly is indicative of the way that the Supreme Court would view 1226A procedures that are available there. Second, I don't think that the court is bound to apply Matthews necessarily from any of the existing precedent because we haven't had a case that presents this particular question. We certainly acknowledge, of course, the court has an existing body of immigration detention law, but we think post Jennings the court really has a blank slate here with respect to this particular question. There's not any existing circuit precedent that applies that same standard or analyzes this question with respect to an individual who's been subject to the bond procedure under 1226A. So that really does present a unique opportunity for the court to, I'm sorry to interrupt. No, I'm sorry. So let's just go back a little bit. Jennings, the Supreme Court in Jennings said we were all looking at the statutes in question in terms of statutory interpretation, and we decided that they required additional bond hearings because of the principle of constitutional avoidance. And what the Supreme Court said in Jennings is no, we're not going to do that. We want you to, at least they sent it back. They said we want you to look at this as a straight constitutional matter. And now that's what we've got here, right? So do we have any cases really on point or is this something that we're looking at fresh? And I understand we've now remanded twice to the district court, the Jennings case, to decide in the first instance whether there's these constitutional claims and whether we have these classes and all of the other questions that the Supreme Court wants the district court to look at and then us to look at again before it gets back up there. But I'm just wondering, where do we stand in terms of the straight application? I do think now this V.L. Ridge is our due process case on point. And then we have to be informed as to what's prolonged detention by Zavitas, DeMore, and some of those other cases that they did actually arise in a different context. So what would you point to for first principles here? So I agree with you that the court is really operating on a clean slate when it comes to this question. I don't think that any of the existing case law necessarily points the court to how it has to answer this question. We also don't agree that there's principles underlying Matthews v. L. Ridge that are important. And if you look at the way that the court applied a version of that test to detention in Landon v. Placencia, I think that that's helpful. But the point that all these immigration detention cases start with, DeMore, Flores, Carlson, Zavitas, all of them start not with what is the interest of the individual to liberty interests. Instead, they're starting from the standpoint of we understand that this is going to be part of the detention process. This is going to be part of the removal process. And we understand that Congress has made some judgments that immigration detention is going to be necessary to ensure that you can get somebody from proceedings to ultimately completing the removal process. So I think that that's where we. I'm sorry, but DeMore held that a very limited period of detention was constitutionally adequate. It assumed that the detention, I think it was like three to four month period as opposed to what's present here. Isn't it much longer here? That's right, Your Honor. And DeMore, I believe that they had crossed the crossed the six month mark and the court was then remanding for additional proceedings. So I think there was some expectation that it would continue beyond the six month mark, but certainly no indication of how long. Here we're dealing with longer detention. We're talking about detention of 14 of 14 months, I believe. And that that is considerably longer than than the time that was additional DeMore. However, DeMore, we were talking about an individual who had received no process, had no individualized determination, no individualized volunteering to that point. Whereas here we have an individual who has been consistently afforded individualized review prior to being taken into custody. There was a consideration of flight risk and danger. In this instance, we had and he was allowed to be out on bond and then had a reoffended reoffending issue, went back to criminal custody and returned to us after serving an additional criminal sentence. So this this presents a quite different position than the DeMore. So I don't know that the time limitations necessarily are as relevant there. Well, let me ask you this. Is there any constitute outer limit? Is there any constitutionally mandated outer limit in the government's mind for how long post removal a person can be detained? I think that question would probably differ by statute. We've certainly acknowledged under the mandatory detention statutes that there are outer limits to the government's detention authority under to hold somebody without bail. We haven't been as clear. Yes. What about this statute? In this statute, I think that there certainly could be instances where an as applied challenge to the regulatory process could be appropriate. For example, perhaps in a situation where the non-citizen is being asked to prove and being asked to prove a negative in a situation where that's just demonstrably problematic. There's been a number of factors that were suggested by the amici in this case that might make the detention unnecessary or unwarranted or where a different burden might be might be necessary. But that's not something that you would do across the board based on a set period of time that is elapsed in the removal proceedings. In this case, really, the problem was that the court was so focused on the time limit that they forgot to look at how that time limit overlaid with the procedural, with the process in which the person had been afforded. So here we were at a point where we had already completed the removal process, the removal proceedings. The government had won and was therefore at a point where their interest in detention for the purpose of removal was that potentially its highest to that point. So it makes little sense to then at that point after removal, after the government's interest was was arguably heightened to then require the government to bear an exceptionally higher burden than it had to bear, even at the outset of the detention. We think that that is the really the fundamental problem with the way that the court approached the Matthews analysis. So it failed to consider how does that time line up with with the proceedings and how does it align with the government's interest at that stage of the proceedings? I see that I am now to the to the point of I wanted to reserve. So I will reserve the remainder unless the court has any more questions. I do have another question. So we we received a 28 day letter yesterday saying that prosecutorial discretion is currently being discussed. Is there some mediation of this going on that we should be advised of? Not at this point, Your Honor. We were approached about the potential for a prosecutorial application being submitted. I don't I don't know if it's been submitted at this point or it'll be sometime later this week. At that point, we the parties can get together and decide whether there's a need for mediation. Would you please notify us if there if the parties intend to go to mediation? And I guess the second point is that you have you have an order of removal here. What is there a reason for the removal not occurring? Can the person not be removed to the country? At this point, it's subject to the temporary the temporary stay of removal under this court's local local rules. So there's not a court ordered stay of removal, but it's one that we have in place pending the completion of the briefing. And finally, Mr. I'm going to assume it's Rodriguez. He he has been released on probation, right? That's right. He was released following the court ordered bond hearing. It was a ten thousand dollar bond, I believe. OK. And has he violated that bond? Not to my knowledge. All right. Thank you. Because I will give you the three minutes that you requested. And I'm not sure who we're hearing first from, I guess, Ms. Morales. I'll be going first. I represent Mr. Rodriguez. Yes. OK. And you're I'm a call. Yes. All right. Please proceed. Good afternoon, Your Honors. May it please the court. Piper, a call council representing petitioner Apelli Araldo Rodriguez Diaz. I will share time today with Kelsey Morales, who represents a meekly public defenders. And I will focus my argument on the Supreme Court and Ninth Circuit precedent that supports the district court's decision. And Ms. Morales will focus on the Matthews v. Eldridge due process analysis and its effect on my client, as well as the immigrants that I make you represent. The government contends that the district court erred in merely affirming and applying the logic of Singh, a decision that this court recently affirmed in its decision in Alamo Gonzalez. Furthermore, the government relies on grave misinterpretations of both DeMora and Carlson, which are fatal to their contention that prolonged detention without a bond hearing at which the government must bear the burden of proof by clear and convincing evidence is constitutional. Here, my client was detained for 14 months, a time that is indisputably prolonged by Supreme Court, as well as this court's precedent. The argument that the passage of time alone is what warranted that new bond hearing minimizes the harm done by the deprivation of an individual's liberty interest while they are detained. The First and Second Circuit, as well as district courts across the country, have concluded that the due process clause compels the government to bear the burden of proof by a standard of clear and convincing evidence in 1226A bond proceedings. While we do not contest that the Supreme Court has upheld detention in some situations, we do contest the constitutionality of detaining someone for a prolonged period of time with the government never making a showing that they are either a danger or a flight risk. Are you, just to clarify the rule you're asking, are you asking for a bond hearing once at the six-month mark, or are you asking for a bond hearing essentially every six months if the detention continues? What we are asking for was after our client was detained for 14 months, that he be afforded an additional bond hearing because of the prolonged nature of his detention. Was it 14 months after the last bond hearing, or 14 months after the order of removal? What procedure? Yes, it was he received a bond hearing two months into his detention and then 14 months later requested the additional bond hearing, and then was subsequently released when the bond hearing did occur. So his total detention was 16 months. Okay, thank you. So do you have a view on when the bond hearing that you're requesting should have occurred? We contend that it, we don't ask the court to make a bright-line rule that it must occur at six months. We just say, you know, our client was detained for 14 months, which is well beyond the five months authorized in Damore and the six months authorized in Zavidas. Somewhere beyond that point, our client's detention became prolonged, and he was entitled to another bond hearing for a due process analysis. Does it matter in your view why it was prolonged? In other words, here it was, there were ongoing proceedings, first before the BIA and now before this court, challenging his order of removal. But is that, in your view, something we should consider, or it's essentially irrelevant, it's just a matter of timing? I would say that it is a matter of timing. Once 14 months has gone by, someone has been deprived of their liberty interest, which this court has consistently held. You know, any detention, any, that is a significant deprivation of an individual's liberty, and the government needs to do a due process analysis to see whether the government's interest outweighs that individual's liberty interest. Let me ask you something. You're also asking for the burden of proof to be shifted to the government and for them to bear a burden of clear and convincing evidence. Is that hard and fast in our law, or has that been questioned by the Supreme Court, that standard? Of clear and convincing evidence, or the burden, or both? Both, burden shifting and the clear and convincing evidence. As to clear and convincing evidence, this court has uniformly applied clear and convincing evidence in cases of prolonged immigration detention. Right, but here's a situation where, I mean, obviously I think it would be hard for the petitioner to bear that burden, but does it need to be clear and convincing evidence? I'm just wondering whether, so what you're incorporating is the pretrial bail standard from criminal law into this standard, and what the government says is, well, but now we've already got an order of removal, we've proven they can't be in detention, now you're putting us to an even higher burden at this point. Yes, I would repeat that this court has still, in cases with individuals with removal orders, applied the clear and convincing evidence standard for individuals in immigration detention, and the Supreme Court has consistently held the government to a standard of proof higher than a preponderance of the evidence, where there's a liberty at stake, and has reaffirmed the clear and convincing evidence standard for various types of civil detention. Which cases of ours were you referring to a moment ago? Was it Singh? Yes. Singh and Casas. Question. Does the fact that Mr. Rodriguez can be released from bond by submitting to the removal order factor into our due process analysis? I think that goes to his liberty interest, which I would also direct that to Ms. Morales, who will delve more deeply into the weighing of the liberty interest. But asking an individual to submit to the removal order is essentially asking them to go from the frying pan into the fire, especially someone who's claiming asylum in this country. So asking them, well, the solution to your detention here in the United States is to go to your home country where you fear torture and death, I think that should be factored into an individual's liberty analysis. Yes. Is underlying challenge to the removal order here is just a CAT claim, though? Yes, Your Honor. And what's the status of that petition for review? Is that being held in abeyance pending this one? No. That petition has been – there are two petitions for review that have been consolidated at this court, and they are moving forward on the briefing. I see. Yeah. Further, I would instruct this court that the reasoning in Singh holds true to my client. Singh holds that detention for any purpose is a significant deprivation of liberty, and if there's a substantial liberty interest at stake, the burden of proof needs to be on the government. The government – But in Singh, wasn't there no bond hearing? He had had a previous bond hearing. In Singh? Yes. Okay. The government attempts to distinguish between normal civil detention and immigration detention because in immigration detention, removal is the ultimate goal. But in Singh, the court rejected that argument and held that this degree of detention for any purpose is a deprivation of liberty and cited Addington. I see that my time is coming to an end, so I would like to pass the questioning on to Ms. Morales, who is prepared to answer the rest of your questions. I respectfully ask this court affirm the district court's application of the reasoning in Singh to my client or refer the case to mediation because my client is no longer – my client no longer meets the government's stated enforcement priorities, as stated in the 28-J that we submitted. When did that – when did the current administration issue the memorandum attached to – It went into effect last Monday. Went into effect last Monday, so the government probably hasn't had a full – or the attorneys haven't had a chance to fully consider that. And we haven't, yeah, had a chance to submit a full – we've discussed informally the prospect of mediation, but we will submit a full prosecutorial discretion request this coming week. All right, and then perhaps we should have you do a joint status on that or a joint response on that as to whether or not you're going to mediation. And I don't want to – maybe we'll give you a deadline of three weeks from the argument. That's fine with us. Okay, all right. Let's hear from Ms. Morales. Good afternoon, Your Honors. My name is Kelsey Morales. I represent Amici Public Defenders. In this case, the government asked the court to uphold the extraordinary position that it should never have been required to justify its detention of Mr. Rodriguez-Diaz during the 16 months it held him under prison-like conditions. This is contrary to settled case law and veils under Matthews v. Elbridge. Amici asked this court to honor its own binding precedent and to join the growing chorus of federal courts to hold that the burden is on the government to justify detention and not on the shackled individual to justify his right to be free. In 2011, this court in Sing required the government to bear the burden to justify continued detention such as what happened here. In just the last approximately one year alone, not one but two U.S. courts of appeals were relying on this court's decision in Sing, held that the government must bear the burden of proof when it detains someone. Numerous courts nationwide have reached similar conclusions. The district court here was entirely justified in its decision, and it should be affirmed. I will now address how the district court's decision must that the government must justify its detention of Mr. Rodriguez-Diaz is required under Matthews. Can I ask before you move to that, I'd just like to get your perspective on Sing because I think one question, one position the government essentially advances is that that precedent really arises in a different context because there the person didn't have the same kind of 1226A rights as Mr. Rodriguez. And secondly, that Sing was essentially based on a perceived statutory right that we now know does not exist. And so maybe you could address sort of the continuing vitality of Sing as it relates to this particular case. Of course, Your Honor. To start with, I will start with the fact that recently in Aleman Gonzalez, the court affirmed that the constitutional due process holding in Sing survived Jennings. So Sing's constitutional holding still remains good law. And as to the point that Mr. Sing was initially subject to mandatory detention and here Mr. Rodriguez-Diaz was under 1226A detention, I believe what's important to know is that we're focused, the petition is focused on what due process protections Mr. Rodriguez-Diaz are necessary at the 16-month mark, not as to his initial bond hearing. And as this court has noted in D.U., when detention becomes prolonged, the liberty interests increase, and accordingly, additional procedural safeguards are necessary. And I believe, Judge Warlaw, you mentioned the Bail Reform Act and where the clear and convincing standard of proof come from, and I just want to take a moment to address that. Sing is an analysis derived from the Supreme Court's civil commitment case law, and it looks to Addington. And what Addington tells us is that when the government is detaining someone and holding someone, we have something much more important than mere loss of money. And when we are looking to liberty, we must go to higher than preponderance of the evidence, but rather the clear and convincing standard. And we see that reflected in the Bail Reform Act, where the Supreme Court found that because the Bail Reform Act provides numerous other procedures, including that the burden of proof be held on the government by clear and convincing evidence for dangerousness, that the Bail Reform Act was constitutional. Here, we're talking about an incredibly different context where noncitizens are not entitled to the appointment of counsel, where there's no speedy trial rights, where there is no discovery. I do want to point the court to the Second Circuit's decision of Velasco Lopez, where that individual requested information as to his DACA status because he did not have that information, and the government attorney would not provide it, and he was only able to obtain it once he retained a lawyer and received his FOIA back. So we are talking about numerous barriers and other lack of substantial procedural protections in the immigration context, especially so once we hit the 16th of March. Council, but didn't the Supreme Court say that that's okay, that things that would be unacceptable for citizens or people in the country, it's different if we're talking about someone in a removal proceedings? So I think two big points there. What the Supreme Court also tells us is that immigration bond proceedings are subject to the constraints of the Constitution, and separately that this issue about the burden of proof actually wasn't authorized by Congress. The Board of Immigration Appeals notes that the statute is silent on the burden issue, and it was only the agency that decided to place the burden on the noncitizen. So this is an agency action, which even I would note that the First Circuit, which found that the burden must be on the government even for the initial bond hearings, the dissent in that case also found, or rather found, that the agency decision, the Board of Immigration Appeals decision, was unlawful under the Administrative Appeals Act. So I would just note we're talking about these congressional actions. One point that Ms. Wilson made in her argument in her brief was that if there were, within the context of an existing 1226A proceeding, some procedural due process violation, that an individual petitioner could seek to raise that and possibly obtain individualized relief through that if there were some unreasonable conduct by the government in that proceeding. What's your perspective on that? Just to make sure I understand your question, Your Honor, are you talking about Ms. Wilson's or the government's argument that they've now secured a final order removal? I just want to make sure I understand the question. No, I'm talking about the point I thought that Ms. Wilson made, that if there were some irregularity or some other problem in an existing 1226A proceeding that a petitioner claimed was uniquely harmful or was out of the ordinary, that may provide a basis for an individualized due process challenge, and we may find that in a future case, but that that was essentially sufficient to vindicate any due process concerns that might arise. That's at least what I took the government to be saying. Yes, here, Your Honor, I think the petitioner did raise the issue of the burden of proof in his motion for changed circumstances. He brought that to the immigration court judge, who, based on the agency precedent, is unable to answer that procedural question. So he did bring forth a constitutional claim as to the very nature of his detention and how it is not consistent with the Supreme Court's civil commitment and pretrial case law, as well as the reasoning in Singh, which acknowledged the substantial liberty interest at stake for individuals subject to prolonged detention. And I now see that my time is up. Accordingly, amici requests that the court affirm the district court's decision, placing the burden of proof on the government by clear and convincing evidence. Thank you, counsel. Ms. Wilson? Thank you. The Aleman decision does confirm that the court's decision in Singh survives Jennings, but in a very narrow respect. It confirms that it survives as a remedy for a particular type of constitutional violation that arises when an individual is subject to mandatory detention for a prolonged period. There's nothing in the Aleman confirmation in Singh itself or any of the court's other case law that suggests that Singh has already been applied or it's already been determined that that standard has to necessarily apply when an individual has been bond eligible for the entirety of their proceeding. We would encourage the court to follow the approach taken by the Third Circuit in Borabat, where it recognized that there is a reason to treat those individuals differently. Like this circuit, the Third Circuit also had precedent like Casas and like the Rodriguez decisions that recognized a right to a bond hearing after a prolonged period of time for Section 1226C detainees. But in Borabat, the Third Circuit determined that the same relief is not necessarily available to an individual who's been subject to 1226A detention. And that makes sense because we're talking about two different things. We're talking about setting a constitutional baseline for one statute versus determining what is the remedy for a constitutional violation in the other statute. I suppose the only possible difference, though, is that it seemed the Third Circuit had existing 1226C case law that was constitutionally based, whereas I don't know that we do yet. I don't know if that makes a difference, but it does seem to be a difference in the status of the law in the different circuits. I guess that's right. Well, I guess I should back up. I don't know that the court had, that the Third Circuit at the time that it had decided, Borabat had decided German Santos, the case that actually constitutionalizes their Chavez-Alvarez statutory holding. So I think at the time Borabat was decided, it was similarly situated to this court in that it had statutory case law and a statutory remedy but had not yet addressed the constitutional remedy for 1226A. So, again, I would say that this court really shares a lot of similarities with the background law that existed in the Third Circuit, and we would encourage the court to take a cue from how the Third Circuit analyzed the question there. Counsel, I have a quick question. If a detained alien wants to be released and is willing to be subjected to removal, will the government release the alien immediately and remove the alien? So I guess the question is whether or not somebody were to forego their stay of removal, were to decide to withdraw their motion. Essentially, isn't a bond, isn't an alien being detained consensual in the sense that they could stop fighting the removal proceedings and be removed right away? That's right. So at any point, an individual can decide that they no longer want to fight their removal proceedings. And that's particularly true when you're talking about a petition for review like has been filed in this case. Here, the petition for review doesn't ordinarily prevent removal. It's only when the individual requests a stay of removal that it triggers this court's circuit rules that would then prevent removal. So if they were to withdraw the request for this stay of removal, the government could then take action to start the removal process. And filing a petition for review, they can still keep the petition for review if they're removed. However, as a practical matter, our government doesn't always get around to removing people. So they would be in limbo, in detention, without a stay of removal, and they were going that right, and they would not know whether they'd be removed or not, and they could still very well languish in detention, even though they gave up their right to get a stay and to have their claims fully adjudicated. Once that stay of removal is lifted, that would then transition the person out of pre-order detention and into 1231 detention. And, of course, this court has safeguards available for 1231 detention, but it also has the Zavedas decision, which would say, if at some point the government's not taking action to remove you, you would not be entitled to a bond hearing, but you'd just be entitled to release outright. That's the constitutional remedy available in that situation. That's right. And isn't it ironic that someone who's been ordered to be removed and fully, after having both procedures denied and they're just awaiting removal, has greater rights than someone who's under discretionary removal, who has a legitimate stay of removal and a petition for review pending? We think that the rights that are available are intended to mirror the different interests at the different periods of time. So the entitlement to release under Zavedas under 1231 is intended to reflect the point that, at some point, the government is not able to remove you. It means that the detention is no longer in furtherance of the government's legitimate interest to removal. So we think that the standards match the government interest, but here the district court applied a standard that didn't properly account for the legitimate interest in detention once that final order of removal had been secured. I appreciate your time, Your Honor. Thank you, Counsel. Rodriguez v. Garland will be submitted, and this case will be, and this case, this court will be in recess for the next five minutes or so. Thank you.
judges: WARDLAW, BRESS, BUMATAY